UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA
FOR THE USE AND BENEFIT OF
QSR STEEL CORPORATION, LLC,
       Plaintiff,

     v.                                 CASE NO. 3:14-cv-1017 (VAB)

SAFECO INSURANCE COMPANY
OF AMERICA,
         Defendant.

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Safeco Insurance Company of America's ("Safeco") Motion to Dismiss or in the alternative to stay the case. Def.'s Mot. to Dismiss, ECF No. 23. Plaintiff QSR Steel Corporation, LLC ("QSR") seeks recovery from Safeco under the Miller Act, 40 U.S.C. §3131 *et seq.*, of payments it believes it is owed for labor and improvements made on property owned by the U.S. Coast Guard. Compl., ECF No. 1. Safeco argues that the case should be dismissed under Rule 12 because QSR fails to state a plausible cause of action. Def.'s Mot. to Dismiss 1, ECF No. 24 (citing Fed. R. Civ. P. 12).

Before reaching the sufficiency of QSR's Complaint, however, the Court determines as a threshold matter whether the case should be transferred under a forum selection clause in the contract governing QSR's work. For the following reasons, the Court orders that the case be transferred to the United States District Court for the Eastern District of Virginia, Norfolk Division, under section 1404(a) of Title 28 of the United States Code, as provided by a binding forum selection clause. Accordingly, the Motion to Dismiss, or in the Alternative to Stay

1

the Case, is **DENIED AS MOOT** without prejudice to renewal in the Eastern

District of Virginia**.**

## I.      FACTUAL ALLEGATIONS

QSR seeks money it alleges it is owed on a construction project from a

payment bond issued under the Miller Act.  Compl., ECF No. 1.  QSR alleges

that TTEC – Tesoro Joint Venture ("TTJV") entered into a contract (the "Prime

Contract") with the U.S. Coast Guard for the renovation of a public building, the

"Mid-Life Renovations to Chase Hall Barracks," at the U.S. Coast Guard

Academy in New London, Connecticut (the "Project").  *Id.* ¶ 5.  QSR alleges that

Safeco, as surety, and TTJV, as the prime contractor, issued a payment bond for

the Project in the sum of $18,503,854.  *Id.* ¶ 14.

The Miller Act requires that, if a contract with the federal government for

the construction of a public building exceeds $100,000 in value, the signatory to

the contract must provide a payment bond given by a surety to secure payment

to subcontractor suppliers of labor and materials under the contract.  40 U.S.C. §

3131(b)(2).[1]  The Miller Act is designed to provide an alternate remedy to

subcontractors on government contracts, who cannot pursue traditional

remedies, such as suing directly on the contract or securing a mechanic's lien

against the improved property.  *See United States v. Johnson Controls, Inc.,* 713

F.2d 1541, 1550-52 (Fed. Cir. 1983) (discussing privity and subcontractors

---

[1] The Miller Act provides:
    Before any contract of more than $100,000 is awarded for the construction,
    alteration, or repair of any public building or public work of the Federal
    Government, a person must furnish to the Government… [a] payment bond…
    for the protection of all persons supplying labor and material in carrying out
    the work provided for in the contract.  40 U.S.C. § 3131(b)(2).

working on government projects); *Kentucky Bridge & Dam, Inc. v. United States*, 42 Fed. Cl. 501, 524 (Fed. Cl. 1998) (noting that "a subcontractor may not directly sue the United States" because he lacks privity with the government); *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 121-22 (1976) (noting that the Miller Act was passed to provide an alternate remedy for subcontractors who cannot attach the government property which they improved) (citation omitted).

QSR alleges that it entered into a subcontract with TTJV for $586,288.26 (which included labor, supervision, materials and equipment) to install steel for the Project and that it completed its work "in full compliance" with the subcontract's requirements.  Compl. ¶¶ 6-7, 10, ECF No. 1.[2]  The subcontract between QSR and TTJV contains a forum selection clause, which provides "SUBCONTRACTOR agrees that all other claims related in any way or manner to the Subcontract Work… shall be litigated in the Circuit Court of the City of Virginia Beach, Virginia or the United States District Court for the Eastern District of Virginia, Norfolk Division, regardless of the location of SUBCONTRATOR'S work or the Project."  Ex. A, Art. 15.3, ECF No. 25-1.

---

[2]  Safeco disputes that QSR entered into a contract with TTJV, the signatory to the Prime Contract, arguing that QSR contracted with "Tetra Tech Tesoro, Inc." ("Tesoro") which Safeco identifies as "one of the joint venturers of the TTEC-Tesoro JV, acting in its capacity as manager of the joint venture."  Def.'s Mot. to Dismiss 2, ECF No. 24.  Presumably, Safeco makes this argument to suggest that QSR is a sub-subcontractor and, therefore, subject to the Miller Act's notice requirement before bringing suit.  *See id.* at 6; 40 U.S.C. §3133(b)(2) (authorizing a sub-subcontractor to bring suit on the payment bond "on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.")  Regardless of why this argument was made, the subcontract itself identifies the signatory on the Prime Contract as the signatory on the subcontract and calls the entity "Tetra Tech Tesoro Inc." or "Tesoro".  Ex. A, R-1, ECF No. 25-1. For convenience, this opinion will refer to the signatory of the Prime Contract and the subcontract as "TTJV," consistent with the allegations in the Complaint.  Also, as discussed in more detail above in Section II, the Court may consider the subcontract between TTJV and QSR because it is integral to the Complaint.  *See supra* Section II, Standard.

The forum selection clause also exempts certain types of claims from its coverage described in "subparagraphs 15.1 or 15.2" of the agreement. *Id.* Article 15.1 relates to "any claim that may exist between SUBCONTRACTOR and TESORO for which the Client [the U.S. Coast Guard] is or may be liable." *Id.* at Art. 15.1. It provides an alternative dispute resolution mechanism for these claims, in which QSR must "prepare its claim" and present it to TTJV for submission to the government "under the disputes resolution provisions of the Prime Contract." *Id.* Article 15.2 discusses claims relating to subcontractor delay. *Id.* at Art. 15.2.

TTJV allegedly paid QSR $492,500 on the contract, leaving a balance owed to QSR of $93,738.26 as of "at least May 2014" that TTJV allegedly refuses to pay. Compl. ¶¶ 9, 12, 17, ECF No. 1. QSR further claims that TTJV was paid for QSR's work in full by the U.S. Coast Guard and, therefore, seeks recovery from the payment bond for this owing sum. *Id.* ¶¶ 11, 18.

QSR brings its claims under section 3133(b)(1) of Title 40 of the United States Code which provides that any person who has furnished labor or materials on a project for which a payment bond was issued under the Miller Act and who has not been paid in full within 90 days after the last labor was performed or material supplied may bring suit to recover the unpaid balance from the payment bond. *F.D. Rich Co.*, 417 U.S. at 118, 122; 40 U.S.C. § 3133(b)(1). QSR alleges that it is entitled to payment from the bond because "[o]ne year has not elapsed from the last date [it] furnished labor and materials to the Project," TTJV refuses

4

to pay what it owes QSR, and "[a]ll conditions precedent to the maintenance of this action have been performed." Compl. ¶¶ 16, 19, ECF No. 1.

In response to the Complaint, Safeco filed a Motion to Dismiss arguing that QSR failed to state a cause of action because QSR has failed to plead satisfaction of (1) the statutory requirements for a Miller Act claim and (2) various pre-conditions to bringing suit set forth in its subcontract with TTJV in Articles 14 and 15. Def.'s Mot. To Dismiss 2-3, 6-10, ECF No. 24; Reply Br. 4-5 & n.3, ECF No. 34. Safeco's arguments under Articles 14 and 15 of the subcontract include that (a) a forum selection clause in the subcontract mandates the suit be brought in the Eastern District of Virginia, not the District of Connecticut, (b) QSR's claims are not ripe because QSR has not presented the claim to TTJV, per Article 15.1 of the contract, and (c) QSR is barred from recovering damages due to delay under Article 15.2. *Id.* In the alternative, Safeco asks the Court to stay the action until the claims become ripe and/or Safeco has time to resolve any claims that may exist between the U.S. Coast Guard and TTJV and related factual issues. Def.'s Mot. To Dismiss 10-12, ECF No. 24.

At the hearing on Safeco's Motion to Dismiss, the Court raised whether the forum selection clause in the contract between TTJV and QSR made the Eastern District of Virginia the more appropriate venue for the case. At the Court's Order, the parties submitted supplemental briefing after the argument addressing (1) whether the Court was required to consider transferring the case pursuant to the forum selection clause before taking up the Motion to Dismiss; (2) whether any claims asserted in the Complaint are not governed by the forum

selection clause; and (3) when during the course of the litigation, if ever, the right to enforce the forum selection clause would be waived. Order Re Suppl. Brs., ECF No. 45.

In these supplemental briefs, Safeco modified its position with respect to two issues. First, it argued that it was not seeking transfer of the case per the forum selection clause under Rule 12, as Rule 12 was not the proper procedural mechanism for doing so. Def.'s Suppl. Br. 3, ECF No. 47; Def.'s Opp. To Suppl. Br. 2, ECF No. 49. Second, it now argues that the sole claim asserted by QSR is governed by the forum selection clause and, therefore, as a logical corollary that the claim does not fall under Articles 15.1 and 15.2 of the subcontract. Def.'s Suppl. Br. 5-7, ECF No. 47. Safeco has not argued that it is resisting the forum selection clause's enforcement in any of its briefs, nor has it specifically sought enforcement of the clause by filing a motion to transfer, but rather has indicated that it is not opposed to its enforcement. Reply Br. 5 n.3, ECF No. 34 ([A]lternatively the case should be transferred to the United States District Court for the Eastern District of Virginia, Norfolk Division, per the subcontract."); Def.'s Suppl. Br. 2, 17, ECF No. 47 (noting that the Court has discretionary authority to consider whether transfer of the case is appropriate under the forum selection clause and noting that "the Court may, and should, transfer this action in its entirety to the United States District Court for the Eastern District of Virginia, Norfolk Division, pursuant to the forum selection clause."); Def.'s Opp. To Suppl. Br. 3-4, ECF No. 49 (noting that QSR has failed to carry its burden in showing that transferring the case would be inappropriate).

6

## II.    STANDARD

At the motion to dismiss phase of a litigation, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).  The same standard applies to a Court's evaluation of a request for a venue transfer.  *See Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. 1:14-CV-597, 2015 WL 2074501, at *3 (N.D.N.Y. May 4, 2015) ("[B]ecause the plaintiff risks losing its chosen forum by enforcement of the forum-selection clause, the plaintiff is entitled to have the facts viewed in the light most favorable to it.") (citation and internal quotation marks omitted).  The Court may consider only "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

The Court may consider extraneous documents not attached to the complaint if the plaintiff has notice of them, their authenticity is not disputed, and they are integral to the plaintiff's claims.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (citation omitted); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp.2d 273, 276 (S.D.N.Y. 2002) (relying on exhibits attached to a motion to dismiss because the documents were integral to the

complaint, plaintiff knew of and possessed them, and neither side disputed their authenticity) (citations omitted).  Accordingly, the Court may consider the subcontract between TTJV and QSR, which was attached as an exhibit to Safeco's Motion to Dismiss, because QSR relied upon its terms in drafting the Complaint and it is integral to its claim.  *See Chambers*, 282 F.3d at 153-54 (finding reliance on documents attached to motion to dismiss was proper because they were integral to the complaint); *Thomas*, 232 F. Supp.2d at 276 (same).

Under the same analysis, the other exhibit attached to Safeco's Motion to Dismiss, Ex. B, Letter Dated May 19, 2014, ECF No. 25-2, cannot be considered, because there is no evidence that QSR was aware of it, had access to it, or relied on it in drafting the Complaint.  The exhibits attached to QSR's Opposition Brief that post-date the filing of the Complaint also cannot be considered for the same reasons.  *See* Exhibits A-C, ECF No. 31-1.

## III.    DISCUSSION

Historically*,* courts in the Second Circuit have preferred using "Rule 12(b)(3) as the procedural device used to enforce the forum selection clause." *Nippon Express U.S.A. (III), Inc. v. M/V Chang Jiang Bridge*, No. 06 CIV. 694 (PKC), 2007 WL 4457033, at *3 (S.D.N.Y. Dec. 13, 2007) (citations omitted).  In *Atlantic Marine Construction Company v. U.S. District Court for Western District of Texas*, the Supreme Court held that a forum selection clause is properly

enforced through section 1404(a) of Title 28 of the United States Code, and not

Rule 12(b)(3).[3]  134 S.Ct. 568, 577, 579 (2013).[4]  Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of
> justice, a district court may transfer any civil action to any other
> district or division where it might have been brought or to any
> district or division to which all parties have consented.

This section represents a "codification of the doctrine of *forum non conveniens…*

[and governs] the subset of cases in which the transferee forum is within the

federal system."  *Atlantic Marine Constr. Co.*, 134 S. Ct. at 580 (internal quotation

marks and citations omitted).

Courts must enforce valid forum selection clauses absent "extraordinary

circumstances."  *Id.* at 581; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S.

22, 29 (1988) ("The presence of a forum-selection clause… will be a significant

factor that figures centrally in the district court's [1404(a)] calculus."); *M/S*

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[I]n the light of present-

day commercial realities [ ] we conclude that the forum clause should control

absent a strong showing that it should be set aside.").  In determining whether to

---

[3] The Court in *Atlantic Marine* specifically reserved decision on whether Rule 12(b)(6) might be used to enforce a forum selection clause.  *Atlantic Marine Constr. Co.*, 134 S.Ct. at 580.  Rule 12(b)(6) allows for dismissal for "failure to state a claim."  Fed. R. Civ. P. 12(b)(6).  Because Safeco has retreated from its position advanced in the Motion to Dismiss briefing and denies that it was seeking to enforce the forum selection clause through Rule 12, this question is not before the Court.  Def.'s Opp. To Suppl. Br. 2, ECF No. 49.

[4] The Court reasoned that enforcement under section 1404(a) made sense in cases where the venue was proper, but not appropriate because there was a forum selection clause.  In this case, the Court agrees with QSR that Connecticut is a proper venue under both the federal venue statute and the Miller Act.  QSR alleges, and Safeco does not dispute, that the Project is located in New London, Connecticut.  Compl. ¶4, ECF No. 1.  The Miller Act provides "[a] civil action brought under this subsection must be brought… in the United States District Court for any district in which the contract was to be performed and executed."  40 U.S.C. § 3133(b)(3)(B).  The federal venue statute also provides that "a civil action may be brought in [ ] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Under either statute, therefore, Connecticut is a proper venue.  Thus, section 1404(a), which applies to cases in which venue is proper but inconvenient or different from what the parties agreed to, is the proper mechanism for enforcing the forum selection clause here.  *See Atlantic Marine Constr. Co.*, 134 S.Ct. at 577, 579-80.

transfer the case under section 1404(a) to enforce a forum selection clause, the Court must first determine whether the forum selection clause is valid and, therefore, enforceable.  Second, it must determine whether the transfer is appropriate under section 1404(a).  *See e.g., Zaltz v. JDATE*, 952 F. Supp.2d 439 (E.D.N.Y. 2013) (applying this two-step framework).[5]

While forum selection clauses are typically enforced upon a party's motion, the Court may *sua sponte* transfer cases to enforce forum selection clauses under section 1404(a).  *See Lead Indus. Ass'n, Inc. v. O.S.H.A.,* 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. s 1404(a) would seem to permit a court to order transfer Sua Sponte.") (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352, p. 568 (1969 ed.)); *Clisham Mgmt., Inc. v. Am. Steel Bldg. Co., Inc.*, 792 F. Supp. 150, 157 (D. Conn. 1992) (collecting cases); *Haskel v. FPR Registry, Inc.*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) ("[S]ince a court may *sua sponte* consider transfer [ ], it is appropriate to consider the application of §1404(a) analysis now rather than wait for defendant's inevitable motion to transfer.") (citing *Starnes v. McGuire*, 512 F.2d 918, 933-34 (D.C. Cir. 1974) (en banc)); *see also Union Elec. Co. v. Energy Ins. Mut. Ltd.,* 689 F.3d 968, 972 (8th Cir. 2012) ("There is

---

[5] Because the existence of a valid and enforceable forum selection clause is "dispositive of the issue of personal jurisdiction," the Court need not analyze whether personal jurisdiction over Safeco in the transferee forum is proper.  *Cf. United Rentals, Inc. v. Pruett,* 296 F. Supp.2d 220, 224 (D. Conn. 2003) (citing *M/S Bremen,* 407 U.S. at 11).  In any case, Safeco has consented to personal jurisdiction in the Eastern District of Virginia, Norfolk Division, "by stepping into the shoes of" the principal and prime contractor, TTJV, and not contesting enforcement of the forum selection clause.  *See Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.,* No. CV 108-153, 2010 WL 317472, at *6 (S.D. Ga. Jan. 25, 2010) (holding that by stepping into the shoes of its principal and seeking to enforce a forum selection clause, a surety consented to jurisdiction of the court specified by the forum selection clause); *see also* 28 U.S.C. §1404(a) (authorizing transfer of a case to a district "to which all parties have consented").

authority supporting the district court's ability to *sua sponte* transfer a case under §1404(a).") (citations omitted).[6]  The decision to transfer a case under section 1404(a) is within the discretion of the district court "according to an individualized, case-by-case consideration of convenience and fairness."  *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (internal quotation marks and citation omitted).

Given the strong policy in favor of enforcing forum selection clauses, the Court finds that it is appropriate to examine the issue of transfer *sua sponte* before addressing the Motion to Dismiss. *See New Moon Shipping Co. v. MAN B&W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997) (noting that the Supreme Court has instructed that courts must "giv[e] substantial deference to the parties' selected forum" and "absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.") (quoting *M/S Bremen*, 407 U.S. at 12); *Indymac Mortg. Hldgs., Inc. v. Reyad*, 167 F. Supp.2d 222, 244 (D. Conn. 2001) (noting that "the Second Circuit has a strong policy of enforcing forum selection clauses") (citing *Sun Forest Corp. v. Shvili,* 152 F. Supp.2d 367, 380 (S.D.N.Y. 2001))**.**

---

[6] To the extent that law from other circuits indicates that the parties must have an opportunity to be heard on a Court's decision to transfer a case *sua sponte*, the Court is satisfied that the parties have been heard.  *See e.g., Mobil Corp. v. S.E.C.,* 550 F. Supp. 67, 69 (S.D.N.Y. 1982) (citing *Starnes v. McGuire*, 512 F.2d 918, 933-34 (D.C. Cir. 1974)); *Carrano v. Harborside Healthcare Corp.*, 199 F.R.D. 459, 463 (D. Conn. 2001) (citing *Starnes,* 512 F.2d at 933-34).  The Court indicated clearly during the Motion to Dismiss hearing that it was seriously considering the appropriateness of a transfer and gave the parties an opportunity to be heard orally on the subject.  It also requested supplemental briefing on the topic.

**A.  Enforceability of the Forum Selection Clause**

QSR argues that the forum selection clause does not and should not

trump the Miller Act venue provision, which the Court agrees would provide for

venue in Connecticut because the construction project occurred here.  40 U.S.C.

§ 3133(b)(3)(B) ("[a] civil action brought under this subsection must be brought…

in the United States District Court for any district in which the contract was to be

performed and executed."); *see supra* note 4.  While the Court is not aware of a

Second Circuit case directly addressing the issue of whether a subcontract forum

selection clause trumps the Miller Act's venue provision, the First, Tenth, Eighth,

and Fifth Circuits have all held that the Miller Act's venue requirements may be

waived by contract, so long as the waiver does not deprive federal courts of

jurisdiction.  *United States ex rel. B&D Mech. Contractors, Inc. v. St. Paul*

*Mercury Ins. Co.*, 70 F.3d 1115, 1117 (10th Cir. 1995) (citations omitted)

(collecting circuit cases).  The Second Circuit also recognized, in the context of

an arbitration clause, that the Miller Act's venue provision may be altered by

contract.  *United States ex rel. Capolino Sons, Inc. v. Elec. & Missile Facilities,*

*Inc.*, 364 F.2d 705, 707-708 (2d Cir. 1966) (holding that an agreement between

contractor and subcontractor to arbitrate disputes should be given effect, even

though the Miller Act applied). Thus, the Court finds that the venue provision of

the Miller Act does not cut against transfer of this case to enforce the forum

selection clause.

Forum selection clauses are "prima facie valid" and "should be enforced

unless the resisting party can show that enforcement would be unreasonable and

12

unjust, or that the clause was invalid for such reasons as fraud or overreaching."
*John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y.
1987) (citing *M/S Bremen*, 407 U.S. at 10, 15).  To determine whether a forum
selection clause is enforceable, the Court must analyze: (1) "whether the clause
was reasonably communicated to the party resisting enforcement; (2) whether
the clause is mandatory or permissive [ ]; and (3) whether the claims and parties
involved in the suit are subject to the forum selection clause."  *Martinez v.
Bloomberg* LP, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks and
citation omitted).  If the clause satisfies these three requirements, the clause is
"presumptively enforceable."  *Id.* (citation omitted).  A party may overcome this
presumption by "(4) making a sufficiently strong showing that enforcement would
be unreasonable or unjust, or that the clause was invalid for such reasons as
fraud or overreaching."  *Id.* (internal quotation marks and citation omitted).[7]

Federal law applies to the question of enforceability, whereas the law
chosen by the parties in the subcontract applies to any necessary interpretation
of the forum selection clause.  *Id.* at 221-24.  Because the subcontract between
QSR and TTJV specifies that "all disputes under this Subcontract shall be
determined and interpreted pursuant to the laws of the Commonwealth of
Virginia," the Court must apply Virginia law in interpreting the contract.  Ex. A,
Art. 15.3, ECF No. 25-1.  Otherwise, it will apply federal law.

---

[7] The only aspect of the forum selection clause that QSR questions in its briefs is its scope and coverage of the questions at issue and parties in this case.  Its arguments, therefore, relate only to third element of the Second Circuit's enforceability test.  The Court will address this factor to address QSR's concern, as well as the other factors, out of an abundance of caution.

The forum selection clause provides the following:

SUBCONTRACTOR agrees that all other claims related in any way or manner to the Subcontract Work or this Subcontract not included in subparagraphs 15.1 or 15.2, above, shall be litigated in the Circuit Court of the City of Virginia Beach, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division, regardless of the location of SUBCONTRACTOR'S work or the Project.  The parties hereto expressly consent to the jurisdiction and venue of said Courts and acknowledge that they may be waiving rights they might otherwise have to bring suit in any other venue.  *Id.*

This clause meets the first prong of the enforceability test, because it was unambiguously written in the subcontract.  It was, therefore, reasonably communicated to QSR clearly, the only party resisting enforcement.  *See Gasland Petroleum, Inc.*, 2015 WL 2074501, at *5 (collecting cases finding that a forum selection clause is reasonably communicated if the language is clear, appears on the face of the contract, and the parties signed it).

With respect to the second element, the Court finds that the forum selection clause is mandatory, because it uses the words "shall be litigated." To be enforced as mandatory, forum selection clauses must include language indicating that the specified court's jurisdiction is exclusive. *See Gita Sports Ltd. v. SG Sensortechnick GMBH & Co. KG*, 560 F. Supp.2d 432, 436 (W.D.N.C. 2008) ("A forum-selection clause can be [ ] mandatory—providing the designated forum with exclusive jurisdiction over any disputes… As a general rule, a forum-selection clause will not be enforced as [ ] mandatory [ ] without some further language that indicates the parties' intent to make jurisdiction exclusive."); *cf. S.W. Virginia R.P.S., L.L.C. v. C.T.I. Molecular Imaging, Inc.*, No. 07000899-00, 74 Va. Cir. 117, 2007 WL 5962517, at *2-3 (Va. Cir. Ct. 2007) ("[W]here venue is

specified in a forum selection clause with mandatory language, that clause will be enforced as a mandatory forum selection clause."); *see also Salis v. Am. Expert Lines,* 331 F. App'x 811, 813-14 (2d Cir. 2009) ("Whether a forum selection clause is mandatory depends on its language, and generally courts will not enforce a clause that specifies only jurisdiction in a designated court without any language indicating that the specified jurisdiction is exclusive" and finding that use of the term "shall be referred to and decided by" rendered the clause mandatory and, thus, enforceable).  Because the clause uses the phrase "shall be litigated," identifies specific venues, the Eastern District of Virginia or the Circuit Court of Virginia, and specifically notes that the parties "acknowledge that they may be waiving rights they might otherwise have to bring suit in any other venue," it is mandatory or provides for exclusive jurisdiction in the specified courts and will be enforced as such.  *Cf. S.W. Virginia R.P.S., L.L.C.*, 2007 WL 5962517, at *2 (noting that a forum selection clause that uses a term like "shall" and specifies the particular venue where an action is to be brought will be enforced as mandatory); *see also Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763-64 (9th Cir. 1989) (affirming the district court's finding that under Virginia law a forum selection clause containing the following sentence was mandatory, "[v]enue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia.")[8]

_____

[8] It is worth noting that the Fourth Circuit applies federal law to determine whether a forum selection clause is mandatory or permissive, whereas the Second Circuit applies the state law chosen by the parties.  *Coastal Mechs. Co., Inc. v. Defense Acquisition Program Admin.*, No. 1:14cv1021 JCC/JFA, 2015 WL 153443, at *4 (E.D. Va. 2015).

With respect to the third element, "[t]he scope of a forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties." *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997). As a preliminary matter, QSR argues that enforcing the forum selection clause from a contract to which Safeco is not a party is impossible and not appropriate. Opp. Br. 6, ECF No. 31. Courts have held that forum selection clauses may be enforced against "non-signatories who are closely related to a signatory, such that enforcement of the [ ] clause is foreseeable." *Kasper Global Collection and Brokers, Inc. v. Global Cabinets and Furniture Mfrs., Inc.,* 952 F. Supp.2d 542, 561 (S.D.N.Y. 2013) (citation and internal quotation marks omitted); *see also Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp.2d 787, 791 (E.D. Va. 2000) ("[W]hen a non-parties' alleged conduct is so closely related to the contractual relationship, both parties and non-parties should benefit from and be subject to a forum selection clause contained in the contract.") (citations omitted).

If a third party's liability in a lawsuit depends on the application of the terms of a contract with a forum selection clause, as is the case here, that party may enforce the forum selection clause of the contract. *See Allianz Ins. Co. of Canada,* 131 F. Supp.2d at 791-92 (finding that forum selection clause applied to non-signatory because application of the clause to the third party was foreseeable); *see also BNY AIS Nominees Ltd. v. Quan*, 609 F. Supp.2d 269, 276 (D. Conn. 2009) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)) ("holding that the claims were in the scope of the forum

16

selection clause where the claims against non-signatories to the contract could not be adjudicated without analyzing whether the parties were in compliance with the contract").

A surety's liability is derivative of the prime contractor's liability to the plaintiff.  *See Artistic Stone Crafters v. Safeco Ins. Co.*, 726 F. Supp.2d 595, 604 (E.D. Va. 2010) (citing *United States v. Seaboard Sur. Co.*, 817 F.2d 956, 962 (2d Cir. 1987)).  A surety stands in the shoes of its principal and may rely on any defense which is available to its principal, except those that are purely personal. *Arrow Plumbing and Heating, Inc. v. N. Am. Mech. Servs. Corp.*, 810 F. Supp. 369, 372 (D.R.I. 1993) (holding that a surety may enforce the forum selection clause of a contract between a subcontractor and a prime contractor in a Miller Act action); *Servewell Plumbing, LLC v. Fed. Insur. Co.*, 439 F.3d 786, 791 (8th Cir. 2006) (upholding a district court's decision to dismiss a case against the surety to enforce the subcontract's forum selection clause); *cf. Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10CV121 AJT/TRJ, 2010 WL 1946319, at *2 (E.D. Va. May 10, 2010) (noting that a surety is "entitled to assert" any defenses available to its principles, "which would include the forum selection clause under the Subcontract") (citations omitted).  Although Safeco is not a party to the agreement, its liability under the Miller Act depends on the application of the terms of the subcontract to determine whether the work was completed in compliance that subcontract.  Therefore, the forum selection clause may be enforced in this lawsuit against Safeco.

Since the forum selection clause plainly includes "claims related in any way or manner to the Subcontract work or [the] Subcontract," on its face the clause governs Plaintiff's claim under the Miller Act.  *See Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am.*, No. CV 108-153, 2010 WL 317472, at *3-4 (S.D. Ga. 2010) (finding that a virtually identical forum selection clause covered claims brought under the Miller Act); *see also Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (noting that an arbitration clause using the phrase "ar[ose] out of or related to [an agreement]" was a "broad arbitration clause[ ] capable of an expansive reach") (citations omitted).  The forum selection clause exempts claims "included in subparagraphs 15.1 or 15.2."  Thus, the Court must be satisfied that the claim does not fall into one of these two exemptions.

Article 15.2 discusses claims relating to subcontractor delay.  No such claims of delay appear in the Complaint, which alleges that the work was completed in compliance with the Project's requirements.  Compl. ¶10, ECF No. 1.  Neither party suggests that they do.  Thus, the Court finds that QSR's claims do not fit under Article 15.2.

Article 15.1 relates to "any claim that may exist between SUBCONTRACTOR and TESORO for which the Client [the U.S. Coast Guard] is or may be liable." Safeco initially argued that the government may be liable and, therefore, that the claim fell under Article 15.1.  Def.'s Mot. to Dismiss 9-10, ECF No. 24.  In its supplemental briefs, Safeco withdrew this argument and took the position that the claim was not covered by Article 15.1.  Def.'s Suppl. Br. 6, ECF

No. 47.  QSR argues that the question of the scope of Article 15.1 presents an issue that the Court should not decide at this time.  Pl.'s Suppl. Br. 3, ECF No. 46; Pl.'s Opp. To Suppl. Br. 2, ECF No. 48.

The Court disagrees with QSR and finds that QSR's claim as it is currently stated in the Complaint does not fall under Article 15.1.  Both sides agree that QSR is making claims on a bond posted by Safeco and TTJV, which does not involve the U.S. Coast Guard.  *See supra* Section I, Factual Allegations (explaining that the purpose of the Miller Act is to provide subcontractors with a remedy because they lack a direct remedy against the government); *see also Dep't of the Army v. Blue Fox,* 525 U.S. 255, 264 (1999) ("[T]he Miller Act by its terms only gives subcontractors the right to sue on the surety bond posted by the prime contractor, not the right to recover their losses directly from the Government.")  Based on QSR's allegations, which the Court must take as true at the moment, TTJV received payment from the Coast Guard for the work QSR performed.  Compl. ¶ 11, ECF No. 1.  Thus, QSR's claims do not indicate the possibility that the Coast Guard could be liable, even indirectly.  Because, at this time, there is no indication that the U.S. Coast Guard may be liable for Plaintiff's claims, Article 15.1 does not apply to this dispute.[9]  Thus, the dispute is fully covered by the forum selection clause in Article 15.3.

---

[9] With its Motion to Dismiss, Safeco submitted a letter from the government indicating that they have rejected QSR's work and have refused to pay TTJV for some of that work, which is the amount that QSR seeks.  Ex. B, Letter Dated May 19, 2014, ECF No. 25-2.  However, as discussed in Section II above, the Court cannot consider this letter on a Motion to Dismiss because Safeco does not show that QSR had access to it or relied on it in drafting the Complaint. *See supra* Section II, Standard; *see also Chambers*, 282 F.3d at 153-54.

Under the fourth prong of the enforceability test, QSR has failed to carry its burden.  Enforcement of an otherwise valid forum selection clause is unreasonable if "(1) its incorporation into the agreement was the result of fraud or overreaching; (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state." *Zaltz*, 952 F. Supp.2d at 455 (citing *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir. 1993)); *see also Martinez*, 740 F.3d at 227-30.  QSR does not cite to any evidence that the forum selection clause is not enforceable due to any of these factors, nor does the Court find any reason that enforcement of the forum selection clause would be unreasonable, unjust, or inappropriate.

## B. Appropriateness of Section 1404(a) Transfer

In determining whether to transfer the case and enforce a forum selection clause, a court may only look to public-interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine Constr. Co.,* 134 S. Ct. at 581 n.6, 582 (alterations in original) (citation and internal quotation marks omitted).  "[T]he plaintiff's choice of forum merits no weight." *Id.* at 581.  The burden is on the party acting in violation of the forum selection clause, in this case QSR, to demonstrate that these public interest factors "overwhelmingly disfavor a transfer." *Id.* at 583.  In *Atlantic Marine*, the

Court cautioned that these factors would rarely cut against transfer, so "the practical result is that forum-selection clauses should control except in unusual cases."  *Id.* at 582.  QSR's Complaint does not present such an "unusual case."

Transfer of the case will not lead to "administrative difficulties flowing from court congestion," because the dispute appears relatively straightforward at this time.  *See RGJP Enters., LLC v. Lele Franchising, LLC*, No. 3:14-cv-01911 (MPS), 2015 WL 3440347, at *2 (D. Conn. May 6, 2015) (finding that a "straightforward contract dispute" would not lead to "'administrative difficulties flowing from court congestion'") (citation omitted).  The interest in having a court "at home with the law" adjudicate the dispute weighs in favor of transfer, since the contract mandates that Virginia law applies.  *Midamines SPRL Ltd. v. KBC Bank NV,* No. 12 CIV. 8089(RJS), 2014 WL 1116875, at *7 (S.D.N.Y. Mar. 18, 2014) (finding that the "at home with the law factor" favored transfer to Belgium where the contract was governed by Belgian law).  While there may be a slight interest in having this dispute, which involves property in Connecticut, decided by a Connecticut court, that interest alone without more does not outweigh the policy favoring enforcement of the forum selection clause.  *See Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1273 (S.D.N.Y. 1995) (finding that the "local interest" in having a contract-based lawsuit resolved in the location of performance did not outweigh a forum selection clause specifying another venue).

While QSR argues that the case should remain in Connecticut, because it would be more convenient because the evidence and witnesses are here, this

argument goes "to the parties' *private interests*, which are accorded no weight."

*Midamines SPRL Ltd.*, 2014 WL 1116875 at *7 (citing *Atlantic Marine Constr.*

*Co.*, 134 S.Ct. at 582) (emphasis in original).  Thus, the Court cannot find and

QSR has failed to articulate a convincing public interest reason militating against

transfer of the case.

## V. CONCLUSION

For all of the foregoing reasons, the case shall be transferred to the United

States District Court for the Eastern District of Virginia, Norfolk Division.  The

Clerk is hereby **DIRECTED** to **TRANSFER** this case accordingly.  The

Defendant's Motion to Dismiss, or in the Alternative to Stay the Case, ECF No.

23, is **DENIED AS MOOT** without prejudice to renewal in the Eastern District of

Virginia**.**

SO ORDERED at Bridgeport, Connecticut this 16th day of July 2015.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE